UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CEM BUILDERS, INC.,<br><br>Defendant. | Case No. 5:18-cv-00685-EJD<br><br>**ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>Re: Dkt. No. 14 |

On January 31, 2018, Plaintiffs filed a complaint against Defendant, seeking damages for breach of a collective bargaining agreement, recovery of unpaid trust fund contributions, and injunctive relief. Dkt. No. 1 ("Compl."). Plaintiffs now move for a right to attach order and writ of attachment of two of Defendant's bank accounts, as well as "any of Defendant's accounts receivable, other later identified checking accounts held in its names, and any proceeds from the sale of its business assets." Dkt. No. 14 ("Mot"), at 14. Defendant has been served with a copy of the Complaint and a previous version of Plaintiffs' motion, Dkt. No. 12, but has not yet appeared or filed a response. For the reasons discussed below, Plaintiffs' motion is GRANTED.

**I.  BACKGROUND**

   **A.  Factual Background**

Plaintiffs are the boards of trustees of several trust funds, which serve to provide employee benefit plans created by written trust agreements subject and pursuant to §§ 3(3) and 3(37) of

ERISA, 29 U.S.C. §§ 1002(3) and (37). Compl. ¶ 3; Declaration of Michele Lauziere ("Lauziere Decl."), Dkt. No. 16, at ¶ 4. The trust funds were established through collective bargaining agreements between the Northern California District Council of Laborers ("Laborers Union") and employer associations representing construction industry employers. *Id.*

On or about June 8, 2006, Defendant entered into a Memorandum Agreement in which it agreed to be bound to the terms of one of these collective bargaining agreements, the Laborers' Master Agreement for Northern California ("Master Agreement"). Lauziere Decl. ¶ 6; Compl. ¶ 9. The Master Agreement provided that "each individual Employer shall pay hourly contributions for each hour paid for and/or worked [by a covered employee], including overtime pay, shift pay, show-up time pay and similar payments." Lauziere Decl., Ex. G ("Master Agreement"), at § 28A. According to Plaintiffs,

> [i]t is the usual practice of the Fund Office to send each employer a monthly Combined Employer Report of Contributions form showing the contribution rate per hour of covered work. The employer is to fill out the form, showing the total number of hours of covered work performed in the reporting month, and calculating the amount due for the employer's contribution. . . . The employer is to return the completed Employer Report of Contributions form, along with its payment for the contributions due, by the 25th day of the month following the month in which the hours were worked.

Lauziere Decl. ¶ 7.

The Master Agreement also provided for certain penalties that would be incurred if a participating employer became delinquent in its contributions:

> Any Individual Employer who is found to be delinquency as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages. All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($ 150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

Master Agreement § 28A. This was also reflected in the Liquidated Damages Program—Board Policy, which stated in relevant part that:

> Liquidated damages and interest will be assessed under the following conditions:
>
> Employer's original report is postmarked after the 25th day of the month following employment. If contributions are paid within thirty (30) days of the due date, the employer will only be assessed the flat fee of $ 150.00. If contributions are paid more than thirty (30) days after they become due, the employer will be assessed interest at the rate of one and one-half percent (1.5%) per month until contributions are paid in full.

Lauziere Decl., Ex. H.

Plaintiffs report that, beginning in June 2015, Defendant failed to timely pay certain contributions which it reported as due and owing. Specifically, during the periods June-December 2015, January-September 2016, December 2016, and January-March 2017, Defendant paid its contributions but not on time. Lauziere Decl. ¶ 17. During the periods May-August 2017, November 2017, and December 2017, Defendant did not pay its contributions at all. *Id.* ¶ 18.

Plaintiffs now seek payments and penalties which are due and owing under the terms of the Master Agreement, as well as associated attorneys fees and costs. Specifically:

- For the periods June-December 2015, January-September 2016, December 2016, and January-March 2017 where Defendant paid its contributions but not on time, Plaintiffs assert that section 28A of the Master Agreement entitles them to 1.5% interest and $150 liquidated damages, both assessed on a per-month basis until the full payment is received. *See* Master Agreement § 28A. Plaintiffs calculate that, for all of the payments Defendant did not make on time, they are owed **$11,864.13** in interest and liquidated damages. Lauziere Decl. ¶ 17 and Ex. I (chart showing per-month breakdown liquidated damages and interest incurred due to late payments).

- For the periods May-August 2017, November 2017, and December 2017 where Defendant did not pay its contributions owed, Plaintiffs argue that 29 U.S.C. §§ 1134(g)(2) entitles them to recover **$327,931.12**, broken down as follows: (1) **$303,850.68** in "unpaid contributions," § 1132(g)(2)(A); (2) **$12,040.22** in "interest on the unpaid contributions," § 1132(g)(2)(B), calculated using the per-month 1.5%

Case No.: 5:18-cv-00685-EJD
ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

3

interest and $150 liquidated damages fee under section 28A of the Master Agreement; and (3) **$12,040.22** in "an amount equal to the greater of-- interest on the unpaid contributions, or liquidated damages provided for under the plan. . . ," § 1132(g)(2)(C).[1] Lauziere Decl. ¶¶ 18-28 and Ex. J (chart of per-month unpaid contributions) and Ex. V (chart of per-month liquidated damages and interest).

- Plaintiffs also seek attorneys fees and costs incurred by its counsel in the underlying collection efforts and in this litigation, which total **$14,961.00**. Declaration of C. Todd Norris ("Norris Decl."), Dkt. No. 17, at ¶ 16 and Ex. B.

In total, Plaintiffs seek **$354,756.25**. Lauziere Decl. ¶ 31.

Plaintiffs report that, in the preceding months, they have attempted to recover this amount due and have been unsuccessful. On January 8, 2018, Plaintiffs sent Defendant an email to inquire about its delinquency and plans for payment. Declaration of Candace Holzapple ("Holzapple Decl."), Dkt. No. 15, at ¶ 5 and Ex. A. The following day, Defendant's bookkeeper, Michele Lyden, sent an email stating that "Tucker [(Defendant)] is going out of business. We are planning on paying Laborers [(Plaintiffs)] in the next couple of weeks when proceeds from the sale of one our divisions is received." *Id.*; *see also* Lauziere Decl. ¶ 35. To date, Defendant has not sent any such payment. Holzapple Decl. ¶ 6. On February 5, 2018, Plaintiffs followed up with Defendant and requested copies of recent payroll records. Holzapple Decl. ¶ 7 and Ex. B. The following day, Ms. Lyden responded that "I have no money to pay Rachel to pull the reports. I have no money to pay me to work either." *Id*. As of February 5, 2018, the California Secretary of State reports Defendant's status in the California Business Search as "suspended." Norris Decl. ¶ 10 and Ex. C.

**B. Procedural History**

Plaintiffs commenced this lawsuit on January 31, 2018. Dkt. No. 1. On February 6, 2018,

---

[1] According to Plaintiffs, the "interest on the unpaid contributions" totals $12,040.22 and the "liquidated damages provided for under the plan . . ." totals $750, so they are entitled to $12,040.22 under § 1132(g)(2)(C).

1  Plaintiffs moved *ex parte* to attach two of Defendant's bank accounts. Dkt. Nos. 7, 10. The Court

2  denied Plaintiffs' motion because they had not sufficiently demonstrated "great or irreparable

3  injury" and instead directed Plaintiffs to serve Defendants with a copies of the Complaint,

4  Plaintiffs' *ex parte* motion, and the Court's order. Dkt. No. 11. Plaintiffs served Defendant the

5  following day. Dkt. No. 12.

6  On February 22, 2018, the Court held a hearing on Plaintiffs' motion. Dkt. No. 13. Only

7  Plaintiffs' counsel appeared. *Id*. During the hearing, the Court determined that it would allow

8  Plaintiff to again move for attachment *ex parte*. *Id*.

9  Plaintiffs filed the instant motion the following Monday. Dkt. No. 14. This second motion

10  seeks to attach the two bank accounts identified in Plaintiffs' original motion, as well as "any of

11  Defendant's accounts receivable, other later identified checking accounts held in its names, and

12  any proceeds from the sale of its business assets." *Id*. at 14. To date, no counsel has appeared for

13  Defendant nor has Defendant otherwise responded to Plaintiffs' motions.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 64, "[e]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). These remedies include attachment. Fed. R. Civ. P. 64(b).

In California, the procedures and grounds for obtaining orders permitting prejudgment writs of attachment are governed by the California Code of Civil Procedure, section 481.010 et seq. In general, an order of attachment may be issued only in an action for a claim of money based on an express or implied contract where the total amount of such claim is a fixed or "readily ascertainable" amount not less than $500.00. Cal. Code Civ. Proc. § 483.010(a).

California Code of Civil Procedure § 484.090 provides that before an attachment order is issued, the court must find all of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the applicant has established "the probable

validity" of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery on the claim upon which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Cal. Code Civ. Proc. § 484.090(a). In addition, a writ of attachment will not be issued if the property to be attached is exempt. *See* Cal. Code Civ. Proc. § 484.090(b); *id*. § 487.020.

California Code of Civil Procedure sections 485.010, et seq. provide a procedure to obtain a writ of attachment without a noticed hearing. A court "shall issue a right to attach order" if, in addition to the five requirements described above, "[t]he plaintiff will suffer great or irreparable injury . . . if issuance of the order is delayed until the matter can be heard on notice." Cal. Code Civ. Proc. § 485.020(a). A plaintiff will suffer "great or irreparable injury" if it "appears from facts shown by affidavit" that any of the following are true:

> (1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.
> (2) Under the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due, unless the debts are subject to a bona fide dispute. Plaintiff's affidavit filed in support of the ex parte attachment shall state, in addition to the requirements of Section 485.530, the known undisputed debts of the defendant, that the debts are not subject to bona fide dispute, and the basis for plaintiff's determination that the defendant's debts are undisputed.
> (3) A bulk sales notice has been recorded and published pursuant to Division 6 (commencing with Section 6101) of the Commercial Code with respect to a bulk transfer by the defendant.
> (4) An escrow has been opened pursuant to the provisions of Section 24074 of the Business and Professions Code with respect to the sale by the defendant of a liquor license.
> (5) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

Cal. Code Civ. Proc. § 485.010(b).

The moving party bears the burden of establishing its entitlement to an order of attachment. *Loeb and Loeb v. Beverly Glen Music, Inc*., 166 Cal. App. 3d 1110, 1116 (1985).

Case No.: 5:18-cv-00685-EJD
ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

6

1  The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the proposed attachment is based. Cal. Code Civ. Proc. § 484.030. The affidavit or declaration must state the facts "with particularity." Cal. Code Civ. Proc. § 482.040.

### III. DISCUSSION

In order to determine whether Plaintiffs are entitled to the order and writ they seek, the Court applies the six factors set forth in Cal. Code Civ. Proc. § 485.020(a).

#### A. The Claim Supporting Attachment

A claim is one upon which an attachment may be issued if the claim is (1) "for money. . . based upon a contract, express or implied," (2) of a "fixed or readily ascertainable amount not less than $500," (3) which is either unsecured or secured by personal property, and (4) is a "commercial claim." Cal. Code Civ. Proc. § 483.010; *see also Douglas v. Smith*, No. 09-1365, 2010 WL 1734903, at *1 (C.D. Cal. Apr. 28, 2010).

Here, Plaintiff's claim is for money and is based on an express contract, the Memorandum Agreement (and, consequently, the Master Agreement) which Defendant entered into in 2006. Lauziere Decl. ¶¶ 4, 6; *see also* Compl. ¶¶ 8-24.

The claim is also for a "readily ascertainable amount" that is not less than $500. First, the unpaid contributions for May-August 2017, November 2017, and December, 2017 that Plaintiffs claim they are owed under 29 U.S.C. § 1132(g)(2)(A) can be derived from totaling contribution amounts that Defendants themselves reported. *See* Lauziere Decl., Exs. K-U. Second, the various interest payments which Plaintiffs seek appear to be a reasonable and definite application of the terms of the contract. *See CIT Grp./Equip. Fin., Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 540 (2004) ("[A]n attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite."). For example, for the interest incurred by late payments in June-December 2015, January-September 2016, December 2016, and

Case No.: 5:18-cv-00685-EJD
ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

7

January-March 2017, Plaintiffs seem to have reasonably calculated this amount by applying the 1.5% interest rate and $150 flat fee required under Section 28A of the Master Agreement to the contributions reported for those months. *See* Ex. I. The same can be said of Plaintiffs' calculation of interest owed from Defendant's failure to make payments for the months of May-August 2017, November 2017, and December, 2017. *See* Ex. J. Third and finally, the attorneys fees seem reasonably discernable from Plaintiffs' counsel's billing records. *See* Norris Decl., Ex. B.

The final two requirements of § 483.010 are also met. Plaintiffs' claim is not "secured by any interest in real property." Cal. Code Civ. Proc. § 484.10(b). In addition, it is a "commercial claim," as it is not a claim against an individual. *See* Cal. Code Civ. Proc. § 484.10(c). Accordingly, Plaintiff's claim is one for which attachment is available.

### B. Probable Validity

A claim has "probable validity" where "it is more likely than not that the plaintiff will obtain a judgment against the defendant on the claim." Cal. Code Civ. Proc. § 481.190. In other words, a plaintiff must establish a prima facie case. *Plata v. Darbun Enter., Inc.*, No. 09-44, 2009 WL 3153747, at *4 (S.D. Cal. Sept. 23, 2009). Under California law, to establish a prima facie case for a breach of contract, a plaintiff must show (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff. *Walsh v. West Valley Mission Cmty. College Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

For the purposes of this motion, Plaintiffs have made such a showing. First, Plaintiffs have established that there was a contract between Plaintiffs and Defendant. Lauziere Decl. ¶¶ 4, 6. Second, Plaintiffs performed by providing benefits to covered employees. *Id*. ¶ 13. Third, Defendant breached by failing to timely pay contributions which it reported as owing. *Id*. ¶¶ 17, 18. Fourth, Defendant's breach resulted damage to Plaintiffs—$303,850.68 in unpaid contributions and up to $35,944.57 in interest and liquidated damages. *Id*. ¶¶ 29, 31. Thus, Plaintiffs' claim has "probable validity."

### C. Purpose of Recovery

The attachment sought is for the sole purpose of preserving Plaintiffs' right to recover their damages as a result of Defendant's alleged breach, not for anything other than that claim. *See id.* ¶ 35. Plaintiffs have met this element.

### D. Exemption from Attachment

The attachment sought does not fall within any exemptions. Defendant is a corporation and, as such, "all corporate property for which a method of levy is provided . . ." may be attached. Cal. Code Civ. Proc. § 487.010(a). Here, at least §§ 488.455 and 488.470 provide such a method of levy for the bank accounts that Plaintiffs seek to attach. In addition, none of the exemptions provided in § 487.020 apply. Defendant's bank accounts are commercial accounts, not personal accounts used for the support of natural persons or their dependents. *See* Cal. Code Civ. Proc. § 487.020. In addition, there is no evidence that Plaintiffs' claim has been discharged or the prosecution of this action has been stayed due to bankruptcy. Norris Decl. ¶ 5. Accordingly, the attachment Plaintiffs seek is not exempt under California law.

### E. Irreparable Harm

As discussed above, a plaintiff can show "great or irreparable injury" by demonstrating any of the five circumstances described in § 485.010(b), including: (1) "danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy . . . ;" (2) "that defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent . . . ;" and (3) "[a]ny other circumstance showing great or irreparable injury . . . ." § 485.010(b)(1), (2), and (5).

At least this final circumstance is present here. Given Defendant's continued and longstanding failure to pay its debts owed to Plaintiffs (*see* Lauziere Decl. ¶¶ 17-31 and Exs. I-V), its suspended corporate status (*see* Norris Decl., Ex. C), and the recent history of Plaintiffs' several attempts to contact and recover money from Defendant (*see* Holzapple Decl. ¶¶ 5-7 and

Exs. A-B; *see also* Lauziere Decl. ¶ 33),[2] it seems that Defendant is indeed shuttering its business and its resources (to the extent they remain) are rapidly dwindling. The fact that Defendant, despite being served with Plaintiffs' Complaint and a previous version of this *ex parte* motion, has not responded or otherwise attempted to defend itself in this case underscores the direness of this situation. *See* Dkt. Nos. 12, 13. Accordingly, the totality of the circumstances here suggest that Plaintiffs will indeed suffer "great and irreparable injury" if attachment is further delayed.

### F. Greater than Zero

The attachment sought is for $354,756.25, an amount greater than zero. *Id*. ¶ 31. Plaintiffs have satisfied this sixth and final element, and thus meet all the requirements for issuing a right to attach order and writ of attachment under § 485.020(a).

## IV. ORDER

For the foregoing reasons, Plaintiffs' application for a right to attach order and writ of attachment against Defendant is GRANTED in the amount of **$354,756.25** against: (a) the following two bank accounts belonging to Defendant: Avidbank, 400 Emerson Street, Palo Alto, California 94301; Account No. 0140017658; and Account No. 0140016007; (b) any accounts receivable belonging to Defendant; and (c) any proceeds resulting from the sale of Defendant and/or the sale of any of its assets.

ACCORDINGLY, THE CLERK OF COURT SHALL ISSUE forthwith the Writ of Attachment, attached hereto as Exhibit A.

IT IS HEREBY FURTHER ORDERED THAT: upon service of the Writ of Attachment upon Avidbank, Plaintiffs shall cause this Order, the attached Writ of Attachment and all moving papers in support thereof to be promptly served upon Defendant along with the Notice of Attachment required by Cal. Code Civ. Proc. § 484.050.

---

[2] Statements by Ms. Holzapple and Ms. Lauziere regarding what Ms. Lyden (Defendant's bookkeeper) told them, as well as copies of emails showing the same, are hearsay and the Court cannot rely on them for the truth of the matter asserted. *See* Cal. Evid. Code § 1200. The Court nevertheless relies on these statements and emails as evidence of Plaintiffs' frustrated efforts to collect its debts owed by Defendant.

IT IS HEREBY FURTHER ORDERED THAT until further order by this Court, Defendant shall not (a) transfer any funds held in any deposit account (including, but not limited to, its Avidbank Account Nos. 0140017658 and 0140016007) except as expressly permitted by statute; (b) with respect to any accounts receivable, proceeds from the sale of the company or any of its assets, proceeds of any claims or funds received, insurance proceeds, or other funds received, take any action other than depositing such funds into the accounts; (c) sell, transfer or encumber its real or personal property, if any; and (d) assign, settle, transfer or encumber any litigation claims.

**IT IS SO ORDERED.**

Dated: February 27, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-00685-EJD
ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT